UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF COLUMBIA

| | |
|---|---|
| INTERNATIONAL UNION, UNITED GOVERNMENT SECURITY OFFICERS OF AMERICA, | ) ) ) |
| Plaintiff, | ) ) ) |
| v. | ) ) ) |
| UNITED STATES MARSHALS SERVICE, | ) ) ) |
| Defendant. | ) ) ) ) |

Civil Action No.
1:02CV1484 (GK)

**FILED**

AUG 2 8 2003

NANCY MAYER WHITTINGTON, CLERK
U.S. DISTRICT COURT

MEMORANDUM OPINION

Plaintiff, the International Union, United Government Security Officers of America ("UGSOA"), brings suit on behalf of its bargaining unit members, the Court Security Officers ("CSOs"), against the United States Marshals Service ("USMS" or "Defendant"). Plaintiff challenges Defendant's implementation and application of modified fitness for duty medical standards for the CSOs, claiming that these actions violate CSOs' Fifth Amendment procedural due process rights. This matter is now before the Court on Defendant's Motion to Dismiss. Upon consideration of the Motion, Opposition, Reply, Sur-replies, the August 19, 2003 Motions Hearing, and the entire record herein, for the reasons stated below, Defendant's Motion To Dismiss is **granted in part** and **denied in part**.

(N)

25

**I. BACKGROUND**[1]

Plaintiff UGSOA is a labor union composed of contract federal security officers, including CSOs.  CSOs provide security inside federal courthouses in each of the 94 federal judicial districts and in the District of Columbia Superior Court.  The USMS is a federal law enforcement agency whose statutory duties include providing security services to federal courthouses and courtrooms. The USMS performs this duty by contracting with private security companies for the services of CSOs.[2]  Thus, CSOs are not federal employees working for the USMS, but rather, they are private-sector employees working for various private security companies which contract with the USMS for the provision of security services.

Many of the CSOs in the bargaining unit are members of Plaintiff UGSOA.  All of Plaintiff's bargaining unit members work under collective bargaining agreements ("CBAs"), all of which contain a provision explicitly limiting termination to cases of "just-cause."[3]  CSOs have always been required to take a physical

_____

[1] For purposes of ruling on a motion to dismiss, the factual allegations of the complaint must be presumed to be true and liberally construed in favor of the plaintiff.  Shear v. Nat'l Rifle Ass'n of Am., 606 F.2d 1251, 1253 (D.C. Cir. 1979). Therefore, the facts set forth herein are taken from Plaintiff's First Amended Complaint or from the undisputed facts presented in the parties' briefs and/or at the Motions Hearing.

[2] There are three private security companies with whom the USMS has contracts to provide CSOs.

[3] Nationwide, there are 97 CBAs between the three private
(continued...)

examination as part of their initial application process, and then annually after employment begins.  Originally, physicals for CSOs were similar in extent and scope to that given to the Deputy United States Marshals and consisted of a three page medical questionnaire.

In 2000, the United States Public Health Service's Office of Federal Law Enforcement Medical Programs conducted a job function analysis of the CSO position.  As a result, in January of 2001, the USMS began using a new twenty-two page physical examination for CSOs which contained new and heightened medical standards, especially as related to hearing and vision, for the annual physical examination given to CSOs. Each private security company is required to provide any CSO who failed with the results of the medical examination and an opportunity to ask for a re-examination.[4]  If the CSO fails the second exam, the USMS deems that CSO "medically disqualified" and prohibits him or her from working under its private service contract.

Pursuant to the terms of the respective CBAs under which CSOs work, once they have been medically disqualified by the USMS, they have no right to challenge that determination.   The CBAs specifically preclude use of the normal grievance procedures to

_____

[3](...continued)
security companies and the various unions representing CSOs.

[4] This re-examination is provided by the same doctor who performed the initial examination.

challenge removal of CSOs from working under the USMS contract or USMS revocation of required CSO credentials.

Since the new physical examination was implemented in 2001, approximately 250 CSOs have been advised by Defendant that they are medically unqualified to perform the essential functions of their jobs.  According to Plaintiff, many of those 250 CSOs have been terminated, and many have requested review of that medical disqualification determination by the USMS.  To date, however, Plaintiff claims that Defendant has refused to process the requested reviews, and to adopt any kind of administrative review process in which disqualified CSOs can have their cases reviewed for either medical or legal inconsistencies or violations.

In July 2002, Plaintiff brought this action against the USMS, claiming that the modified fitness for duty medical standards deprived CSOs of procedural due process and violated the APA's notice and comment requirements.[5]  Plaintiff seeks a declaratory judgment that the modified fitness for duty medical standards violate the APA; an injunction prohibiting Defendant from applying the modified fitness for duty standards and mandating that Defendant direct the private security companies to reinstate any CSOs medically disqualified under those modified standards; and

---

[5] Specifically, Plaintiff claimed that the APA's notice and comment requirements prohibit Defendant from modifying its contracts with private security companies to require new medical standards for CSOs.

compensatory damages for wages and benefits lost by medically disqualified CSOs.  Plaintiff also seeks monetary damages on its own behalf for dues it lost when its member CSOs' employment was terminated.

## II.  STANDARD OF REVIEW

Pursuant to Fed. R. Civ. P. 12(b)(6), "a complaint should not be dismissed for failure to state a claim unless it appears beyond doubt that the plaintiff can prove no set of facts in support of his claim which would entitle him to relief." Conley v. Gibson, 355 U.S. 41, 45-46 (1957); see also Scheuer v. Rhodes, 416 U.S. 232, 236 (1974) ("The issue is not whether a plaintiff will ultimately prevail but whether the claimant is entitled to offer evidence to support the claims.").[6]  As noted earlier, the factual allegations of the complaint must ordinarily be presumed true and liberally construed in favor of the plaintiff. Shear, 606 F.2d at 1253.

## III.  ANALYSIS

Defendant seeks to dismiss Plaintiff's Amended Complaint pursuant to Fed. R. Civ. P. 12(b)(1) and 12(b)(6), claiming that (1) the APA provides an exception for the situation at issue in

---

[6] As Defendant has also moved to dismiss pursuant to Fed. R. Civ. P. 12(b)(1), the Court notes that "[t]he standard of review for a motion to dismiss for lack of subject matter jurisdiction pursuant to Rule 12(b)(1) is virtually identical to that used for 12(b)(6) motions." Tripp v. Executive Office of the President, 200 F.R.D. 140, 142 (D.D.C. 2001).

this case and (2) Plaintiff is not entitled to relief under its generalized procedural due process claim.  Defendant alleges three separate reasons that warrant dismissal of Plaintiff's procedural due process claim as a matter of law.  First, Defendant argues that Plaintiff lacks associational standing to advance the procedural due process claim on behalf of its bargaining unit members because those claims require the involvement of individual CSOs.  Second, Defendant claims that CSOs do not have a cognizable property interest under the due process clause.  Third, Defendant alleges that it has already afforded those CSOs affected by the modified fitness for duty medical standards any process due to them by allowing them the opportunity to request a second medical exam.

### A.   Plaintiff's Initial Concessions

During the course of the briefing of this Motion, Plaintiff has made two concessions.  First, Plaintiff conceded that Count II of its Amended Complaint, i.e., its APA notice and comment challenge, is precluded by the APA's exception that notice and comment requirements do not apply to "a matter relating to agency management or personnel or to public property, loans, grants, benefits, or contracts."  5 U.S.C. § 553(a)(2).  Second, Plaintiff conceded that it lacked standing to seek compensatory damages in the form of back pay and monetary benefits for its individual bargaining unit members.  In addition, at oral argument, Plaintiff also conceded that the doctrine of sovereign immunity barred it

-6-

from seeking monetary damages on its own behalf from the USMS
because the APA does not waive sovereign immunity with respect to
monetary damages.  See Fed. Deposit Ins. Corp. v. Meyer, 510 U.S.
471, 475 (1994) ("Absent a waiver, sovereign immunity shields the
Federal government and its agencies from suit."); 5 U.S.C. § 702
("An action in a court of the United States seeking relief other
than monetary damages ... shall not be dismissed nor relief therein
be denied on the ground that it is against the United States...."); 
see also Bowen v. Mass., 487 U.S. 879 (1988) (recognizing that §
702 does not waive sovereign immunity for monetary damages).

### B.   Plaintiff Has Associational Standing to Assert a Facial Procedural Due Process Claim on Behalf of Its CSO Bargaining Unit Members.

As a union suing on behalf of its bargaining unit members,
Plaintiff must demonstrate associational standing by establishing
that "(a) its bargaining unit members would otherwise have standing
to sue in their own right; (b) the interests it seeks to protect
are germane to the organization's purpose; and (c) neither the
claim asserted nor the relief requested requires the participation
of individual members in the lawsuit."  Hunt v. Wash. State Apple
Adver. Comm'n, 432 U.S. 333, 343 (1977).   At oral argument,
Defendant conceded Plaintiff's associational standing to mount a
facial challenge to Defendant's implementation and application of
modified fitness for duty medical standards.

However, Plaintiff also alleges that USMS has engaged in differential application of its modified fitness for duty medical standards in individual cases.  Such a fact-specific challenge requires the participation of individual bargaining unit members and necessitates a fact-intensive and individualized inquiry.  See APCC Servs., Inc. v. AT&T, 254 F.Supp.2d 135, 143 (D.D.C. 2003) ("associational standing is improper for claims requiring a fact-intensive-individual inquiry", citing to the holdings of Telecommunications Research v. Allnet Communication Servs., 806 F.2d 1093 (D.C. Cir. 1986) and Air Transp. Ass'n v. Reno, 80 F.3d 477 (D.C. Cir. 1996); see also United Food and Commercial Workers Union v. Brown Group, Inc., 517 U.S. 544, 557 (1996) ("the third prong of the associational standing test is best seen as focusing on ... matters of administrative convenience and efficiency...."). Thus, Plaintiff lacks associational standing to challenge the alleged differential application of Defendant's modified fitness for duty medical standards in individual cases.

### C.   Plaintiff Has Asserted a Valid Procedural Due Process Claim with Respect to the CSOs' Property Interest in Continued Private Employment.

Plaintiff claims that Defendant deprived CSOs of procedural due process in two ways when it caused the termination of those who failed to meet the modified fitness for duty medical standards. First, Plaintiff claims that Defendant forced the private security companies to eliminate the right of terminated bargaining unit

members to challenge the USMS' medical disqualification
determinations through the grievance procedures provided in either
the CBAs or the private service contracts.   Second, Plaintiff
argues that Defendant denied some CSOs the same notice and
opportunity it gave others for a hearing challenging their
termination of employment.

> **1.   CSOs have a cognizable property interest in
> continued employment which arises out of the "just-
> cause" clause contained in their CBAs.**

In considering Plaintiff's claim that the USMS violated the
due process rights of CSOs, the Court must first determine whether
Plaintiff has alleged a cognizable property interest which entitles
its CSO bargaining unit members to procedural due process
protection.  See Cleveland Bd. of Educ. v. Loudermill, 470 U.S. 532
(1985).  This initial determination is crucial because "[p]roperty
interests ... are not created by the Constitution.  Rather, they
are created and their dimensions are defined by existing rules or
understandings that stem from an independent source such as state
law--rules or understandings that secure certain benefits and that
support claims of entitlement to those benefits."  Bd. of Regents
of State Colleges v. Roth, 408 U.S. 564, 577 (1972) (finding no
protected property interest where terms of appointment of assistant
professor secured absolutely no interest in re-employment for the
next year and there was no state statute or university rule or

policy that secured his interest in re-employment or that created any legitimate claim to it).

Plaintiff argues that CSOs have a cognizable property interest in their continued employment and that this interest derives exclusively from the "just-cause" clause in their CBAs. The law clearly supports Plaintiff's claim that a CBA containing an explicit provision prohibiting the termination of employees except in cases of "just-cause" creates a cognizable property interest in continued employment. See, e.g., Loudermill, 470 U.S. at 538-39 (holding that a property interest in continued employment was created by a state statute permitting dismissal only for "misfeasance, malfeasance, or nonfeasance"); Ciambriello v. County of Nassau, 292 F.3d 307, 326 (2d Cir. 2002) (holding that a public employee has a property interest in continued employment if the employee is guaranteed continued employment absent just cause for discharge); Sanguigni v. Pittsburgh Bd. of Pub. Educ., 968 F.2d 393, 401 (3d Cir. 1992) (concluding that "only two types of contracts" create protected property interests, those that confer "a protected status" and those comprising "for cause" provisions); Leary v. Daeschner, 228 F.3d 729, 742 (6th Cir. 2000) (same); Dill v. City of Edmond, 155 F.3d 1193, 1206 (10th Cir. 1998) (same). Thus, there is no doubt that CSOs have a protected property interest in continued employment which derives exclusively from the "just-cause" clause in their CBAs.

-10-

**2. CSOs also have a protected property interest in the continuation of their private employment.**

Defendant argues that even if there is a protected property interest in continued employment, it does not extend to private employment contracts.  The Supreme Court, however, has recognized that even a purely private contract can create a property interest entitled to due process protection.  Greene v. McElroy, 360 U.S. 474, 492, 493 n22 (1959).  In Greene, an engineer who for many years worked for a private contractor on a military installation lost his job when the United States Department of Defense revoked the security clearance giving him access to classified documents because it had received information that the employee was sympathetic to communism.  On the basis of that information, the employee's security clearance was revoked without affording him a hearing.  Id. at 475-79.  When his employer, having no other choice, was forced to discharge him, Greene was unable to procure employment elsewhere in his field.  Id. at 487.

The Supreme Court found that the "alleged property is petitioner's employment" and that "[r]espondents admit, as they must, that the revocation of [a] security clearance caused petitioner to lose his job with [the government contractor]...."  Id. at 492. The Supreme Court then declared that "...the right to hold specific private employment and to follow a chosen profession free from unreasonable governmental interference comes within the

'liberty' and 'property' concepts of the Fifth Amendment...." _Id._
(emphasis added).

The Supreme Court's declaration that property interests
protected by the Fifth Amendment may be created by virtue of purely
private contractual agreements has been followed and applied by
numerous circuits, including ours. _See_ _Phillips v. Bureau of
Prisons_, 591 F.2d 966, 970 (D.C. Cir. 1979) (affirming the premise
that a private contractual right can constitute a property interest
entitled to due process protection and citing _Greene_); _Stein v. Bd.
of City of N.Y._, 792 F.2d 13, 16 (2d Cir. 1986) (concluding that
"[w]here the independent source of a property interest is a private
contract, the state cannot transgress on the claim of entitlement
to continued employment without due process of law."); _Chernin v.
Lyng_, 874 F.2d 501, 505 (8th Cir. 1989) (holding that "both
employees and employers have an interest in the employment relation
protected from arbitrary government action by the Due Process
Clause.").

Given that the instant case concerns the interest asserted by
private employees bringing suit against government officials whose
conduct caused them to lose their private employment, _Greene_ and
its progeny compel the conclusion that the bargaining unit CSOs

have a protected property interest in the continuation of their
private employment.[7]

_____

[7] Defendant's attempts to weaken the ruling in <u>Greene</u> are
unpersuasive. First, Defendant asserts that the relevant passage
in <u>Greene</u>--"...the right to hold specific private employment and to
follow a chosen profession free from unreasonable governmental
interference comes within the 'liberty' and 'property' concepts of
the Fifth Amendment", 360 U.S. at 492--is mere dicta because the
Supreme Court ultimately decided <u>Greene</u> on statutory grounds.
This, however, does nothing to change the fact that the relevant
passage is clearly the law which the Supreme Court assumed governed
the case--namely that property interests protected by the Fifth
Amendment may be created by virtue of purely private contractual
agreements. Moreover, the Supreme Court has re-affirmed this
principle. <u>See</u> <u>Fed. Deposit Ins. Corp. v. Mallen</u>, 486 U.S. 230,
240 (1988) (stating that "[i]t is <u>undisputed</u> that [a private
contract employee's] interest in the right to continue to serve as
[an employee] is a property right protected by the Fifth Amendment
Due Process Clause.") (emphasis added). Moreover, many circuit
courts, including our own, have acknowledged the vitality of this
principle. <u>See</u>, <u>e.g.</u>, <u>Phillips</u>, 591 F.2d at 970; <u>Stein</u>, 792 F.2d
at 16; <u>Int'l Union v. Auto Glass Employees Fed. Credit Union</u>, 72
F.3d 1243, 1250 (6th Cir. 1996); <u>Chernin</u>, 874 F.2d at 505; and
<u>Merritt v. Mackey</u>, 827 F.2d 1368, 1371 (9th Cir. 1987). Thus,
regardless of whether the relevant analysis from <u>Greene</u> may
technically be labeled as dicta, it is clear that the Supreme Court
assumed that private contracts can create property interests
protected by the Fifth Amendment, reaffirmed that assumption in
<u>Mallen</u>, and that that assumption has been relied on by the circuit
courts.

Second, Defendant argues that the cases cited by Plaintiff in
support of a finding of a protected property interest in private
employment turn solely upon the unique nature of § 1983 claims.
While some of Plaintiff's cases do involve § 1983 claims, the
argument is without merit because § 1983 is a purely procedural
vehicle that parties use to gain entrance into federal court.
Therefore, it is immaterial that some of these cases involved §
1983 claims while the instant case does not.

Third, Defendant argues that because Plaintiff has relied upon
the CBAs' "just-cause" clause to assert the CSOs' property interest
in continued employment, Plaintiff cannot challenge the separate
CBA provision that eliminates the right of terminated CSOs to
(continued...)

      **3.**    **The Court need not reach the issue of whether Plaintiff's bargaining unit members have a property interest in their medical clearance.**

Defendant also asserts that the property interest at issue in this case is not in continued employment, but rather is in the medical clearance denied to CSOs who failed the modified physical examination. Given that the Court has already held, for the reasons stated, that CSOs have a protected property interest in their continued employment and that such interest arises out of the CBAs which each contain a "just-cause" clause, it is unnecessary to reach the issue of whether they have a protected property interest in their medical clearance.

     **D.**    **Factual Disputes Preclude a Determination, at This Point, of the Sufficiency of the Process Provided to CSOs by the USMS.**

Since it has been determined that the Plaintiff has presented a valid due process claim, "the question remains what process is due." Loudermill, 470 U.S. at 541 (citation and internal quotation marks omitted). Defendant argues that this matter should still be dismissed because it already has afforded those CSOs affected by the modified fitness for duty medical standards all process due to them by allowing them the opportunity to request a second medical exam. Oral argument has made clear, however, that this issue is

---

    [7](...continued)
invoke grievance procedures to challenge their medical disqualification determination. Defendant offers no support for this argument and it has no merit.

not ripe for decision.  At a minimum, there exist relevant factual disputes about what Defendant's policy is and the extent to which Defendant is uniformly applying it.  Given these factual disputes and the fact that the parties have not had an opportunity to argue this issue fully, it would be wholly inappropriate for the Court to decide the sufficiency of the process provided, if any, in a Motion To Dismiss.

## IV. CONCLUSION

For the foregoing reasons, Defendant's Motion to Dismiss is **granted in part** and **denied in part**.  In light of the parties' concessions, Count II of Plaintiff's Amended Complaint is dismissed; Plaintiff's request for compensatory damages in the form of back pay and monetary benefits is dismissed; and Plaintiff's request for monetary damages in the form of dues lost when its bargaining unit members were terminated is dismissed.  However, Plaintiff UGSOA has stated a valid Fifth Amendment procedural due process claim against Defendant USMS.

The Court's decision to deny Defendant's Motion to Dismiss should not be interpreted as a dispositive finding that Defendant is prohibited from requiring CSOs to meet its standards of physical fitness.  Rather, the Court has made an initial ruling that CSOs have a constitutionally protected property interest in their continued employment and that they are entitled to due process if and when the government acts to impair that property interest.

-15-

The next step in this litigation will be for the Court to decide what process the terminated bargaining unit members in fact received from Defendant and whether that process comported with constitutional standards.  See Matthews v. Eldridge, 424 U.S. 319, 335 (1976).

An Order will issue with this opinion.


_August 28, 2003_
Date

_Gladys Kessler_
Gladys Kessler
U.S. District Judge