**UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF COLUMBIA**

```
_____
INTERNATIONAL UNION, UNITED   )
GOVERNMENT SECURITY OFFICERS  )
OF AMERICA, et al.,           )
                              )
          Plaintiffs,         )
                              )
     v.                       )    Civil Action No. 02-1484 (GK)
                              )
JOHN CLARK, Acting Director   )
of the United States Marshals )
Service, et al.,              )
                              )
          Defendants.         )
_____ )
```

**MEMORANDUM OPINION**

Plaintiffs are the International Union, United Government Security Officers of America ("Union") and fifty-four individually named Court Security Officers ("CSOs").[1] Several claims are currently pending in this matter. First, the Union is pursuing a Fifth Amendment procedural due process claim against John Clark, Acting Director of the United States Marshals Service ("USMS"),

---

[1] The individual CSOs are Ann J. Barkley; Frank Brigance; Donald Durham; James E. Lane; Keith Morris; Harvey Simmons; Carl Akins; Thomas A. Alexander; Donald H. Allen; David A. Arriola; Vernon Broad; Frank Browder, Jr.; William J. Burge; Jimmy D. Burrow; Albert J. Busam; Clarence Bynum; Michael L. Campbell; Lawerence K. Churm; Harlen D. Coy; Byron G. Dahlen; Philip I. Elder; Robert Farnsworth; Gilmer S. Forbis; Ruben V. Gonzales; William F. Guthrie; John Hansen; Frank Hruza; Robert Hubbard; Donald W. Johnson; Don E. Kemp; James D. Kimbrel; Walter E. Lamb; William P. Lambright; Monty L. Laughlin; Roberto Lebron; Stephen F. McDonald; Chester L. McKune; Jack C. Morehead; Dallas K. Murphy; Miller Pearson; James Ralph; Robert Rarick; Ronald F. Ray; Willie Rich; Harvey Robideaux; Felipe Jorge-Rodriguez; Thomas J. Roy; John B. Scott; Frank Shaffer; Rhys Sirjane; Brian J. Smith; Donald Smith; Fred A. Thatcher; and Roberto Torrez.

challenging the USMS's implementation and application of modified fitness for duty medical standards for the CSOs.² Second, the fifty-four CSOs, in their individual capacities, are pursuing Fifth Amendment due process claims against the USMS and disability discrimination claims against Akal Security, Inc. ("Akal"), MVM Security Services, Inc. ("MVM") and Ares Group Incorporated ("AGI"), under both Sections 501 and 504 of the Rehabilitation Act of 1973 ("Rehabilitation Act"), 29 U.S.C. §§ 791, 794, and the Americans with Disabilities Act ("ADA"), 42 U.S.C. §§ 12101, et seq..³  Third, a putative class of the CSOs seeks to pursue a class-wide disability discrimination claim against USMS under the Rehabilitation Act.  Fourth, and finally, Akal is pursuing counterclaims against the individual CSOs who previously worked for the company, seeking, inter alia, indemnification for all costs, fees, and damages that may arise out of this litigation.

---

² The Union alleges violations of the CSOs' Fifth Amendment procedural due process rights on behalf of all of the individual CSOs except Plaintiff David Arriola because he "was a probationary CSO when terminated and, therefore was not a [Union] bargaining unit member. Accordingly, he did not have a property interest in his employment and did not have a Fifth Amendment right to due process prior to termination." Fourth Am. Compl., n.2.

³ On June 13, 2005, the individual CSOs voluntarily dismissed their claims under the Rehabilitation Act against Akal and AGI. See Docket Nos. 159 and 160.  On March 30, 2005, the Court dismissed the individual CSOs' claims under the Rehabilitation Act against MVM. See Docket No. 134 (granting MVM's Motion to Dismiss Count II of Plaintiffs' Third Amended Complaint or, in the Alternative, for Summary Judgment).

This matter is now before the Court on Plaintiffs' Motion to Dismiss Counterclaims Brought by Defendant Akal Security, or, in the Alternative, for Summary Judgment [Dkt. #136]. Upon consideration of Plaintiff's Motion, Opposition, Reply, and the entire record herein, and for the reasons stated below, Plaintiffs' Motion is **granted**.

## I. BACKGROUND

The USMS is a federal law enforcement agency whose statutory duties include providing security services to federal courthouses and courtrooms. See 28 U.S.C. § 566(a).[4] It performs these duties, in part, by contracting with private security companies for the services of CSOs. See 28 U.S.C. § 604(a)(22). Defendants Akal, MVM, and AGI contract with the USMS to provide judicial security in various federal courthouses across the country.[5] See Fourth Am. Compl. ¶¶ 7,8,9.

According to Plaintiffs, the CSOs are not federal employees working for the USMS. Rather, they are private-sector employees working for the Contractors. See id. ¶ 21.

---

[4] 28 U.S.C. § 566(a) states that the USMS has the responsibility to "provide for the security and to obey, execute, and enforce all orders of the United States District Courts, the United States Courts of Appeals, and the Court of International Trade." 28 U.S.C. § 566(a).

[5] Hereinafter, Akal, MVM, and AGI will be described collectively as the "contractors."

The Union is a labor union composed of contract federal security officers, including CSOs. All of the individual CSOs named as Plaintiffs in this action are members of the Union. The Union negotiates collective bargaining agreements ("CBAs") with the Contractors that determine the terms and conditions of employment for its member CSOs. See id.

The pertinent provisions of the CBAs are:

Section 6.1 ("Grounds for Discipline and Dismissal") (referred to herein as the "hold harmless clause"):

> Any temporary or permanent removal of an employee by determination of the Government as described in Section H-3 of the Contract shall not become permanent without requisite notice to the employee and the opportunity provided for the employee to respond to the Government's action within fifteen (15) days of the determination. Upon written request, the Company will provide the Union, in a timely manner, with all information concerning the removal that they may legally release, and will provide the Union with any relevant information concerning the proper Government point of contact and their contact data. The 'final decision' on the employee's removal shall be determined by the Government, and the Employer shall be held harmless by the Union and the employee for any further claims made after this final determination. This provision is not intended to limit or prohibit the rights of any party to seek relief from other parties.

Pl.s' Ex. 1, Article 6, Section 6.1(a).

Article 19 ("Service Contract Procedures and Obligations") (referred to herein as the "no recourse clause"):

> The parties recognize that they are providing a service to the Unite[d] States Government. Therefore, the terms of this agreement are subject to the directives of the Government, and, except as provided herein, there shall be no recourse against the Employer with regard to its actions taken to comply with those directives. In the event a directive necessitates a deviation from the

obligations or procedures contained in this Agreement, the Union may request that the parties hereto meet and confer with regard to the effects, if any, of the deviation necessitated by the Government's directive. A copy of a written directive covered by this provision shall be provided to the International UGSOA president upon request.

Id., Article 19.

The CBAs also contain the following grievance and arbitration procedures:

Section 5.1 ("Intent"):

For purposes of this Agreement, a grievance shall mean a claimed violation, misinterpretation, or misapplication of *any* provision of this Agreement, or the challenge of any disciplinary action taken against a Union Employee, except that this grievance procedure shall not be used for any action or order of removal of an Employee from working under the contract by the U.S. Government, or revocation of required CSO credentials by the USMS[.]

Id., Article 5, Section 5.1 (emphasis added).

Section 5.3 ("Grievance Procedure"):

*All* grievances *shall* be presented and processed in accordance with the following procedures:

**A. Informal Step** - The parties shall make their best efforts to resolve *any* dispute on an informal basis. Both the Company and the Union agree that the Employee will first discuss the complaint with their immediate supervisor (not in the bargaining unit), within eight (8) working days of the incident being grieved, to start the informal procedure. If the informal procedure is not invoked within eight working days of Employee's knowledge of a grievable issue, then it is agreed by both parties that no further action can be taken. If, during the course of this discussion either the Employee or the supervisor deems it desirable, a steward or other Union representative will be called in (emphasis added).

**B. Step One** - If the matter is not resolved informally,

the Employee shall, not later than ten (10) days after the informal discussion with the immediate supervisor, set forth the facts in writing, specifying the Article and paragraph allegedly violated. This shall be signed by the aggrieved Employee and the Union representative, and shall be submitted to the Contract Manager or designee with a copy to the Company's HR Director. The Contract Manager or designee shall have ten (10) days from the date the grievance was presented to return a decision in writing with a copy to the aggrieved Employee and the union representative.

**C. Step Two -** If the grievance is not settled in Step One, the grievance may be appealed in writing to the Company's Director of Human Resources or designee, not later than ten (10) days from the denial by the Contract Manager or designee. The Director of Human Resources or designee will have ten (10) days from the date the grievance was presented to return a decision, in writing, with a copy to the aggrieved Employee and the union representative.

**D. Grievance for Discipline -** Any grievance involving discharge or other discipline may be commenced at Step One of this procedure. The written grievance shall be presented to the Contract Manager through the Site Supervisor or designee within eighteen (18) days after the occurrence of the facts giving rise to the Grievance.

<u>Id.</u>, Article 5, Section 5.3 (emphasis added).

Section 5.4 ("Arbitration Procedure"):

Grievances processed in accordance with the requirements of Section 5.3 that remain unsettled may be processed to arbitration by the Union, giving the Company's Director of Human Resources written notice of its desire to proceed to arbitration not later than fifteen (15) days after rejection of the grievance in Step Two.

<u>Id.</u>, Article 5, Section 5.4.

In 1999, the United States Public Health Service ("PHS") Office of Federal Law Enforcement Medical Programs conducted a job function analysis of the CSO position. As a result of that

analysis, in January of 2001, the USMS modified the fitness for duty medical standards for CSOs.  It then implemented those modified standards "by advising [the Contractors] that it was amending its judicial security contracts and that it would require full compliance with the new medical/physical examination as to all present and future CSOs."  Fourth Am. Compl. ¶ 26.

The judicial security contracts require all prospective CSOs to pass a pre-employment medical exam.  In addition, they require all current CSOs to pass an annual medical re-exam.  See id. ¶ 22.

All of the individual CSOs named as Plaintiffs in this action have been medically disqualified by the USMS and removed from the judicial security contracts.

On July 26, 2002, the Union brought this action against the USMS, claiming that the modified fitness for duty medical standards deprived the CSOs of procedural due process and violated their rights under the notice and comment requirements of the Administrative Procedure Act ("APA"), 5 U.S.C. §§ 706, et seq.[6]  On August 28, 2003, the Court granted in part and denied in part the USMS's Motion to Dismiss, concluding that the Union had stated a valid Fifth Amendment procedural due process claim against USMS but dismissing its APA claim.  See Int'l Union, United Gov't Sec.

---

[6] The Union claimed that the APA's notice and comment requirements prohibited the USMS from modifying the judicial security contracts to require modified fitness for duty standards for the CSOs.

Officers of America v. USMS, No. 02-CV-1484 (D.D.C. Mem. Op. Aug. 28, 2003).

On December 17, 2003, the Court granted the Union leave to file a Second Amended Complaint in order to add as Plaintiffs thirty-eight former CSOs. These individually-named CSO Plaintiffs asserted that they have "the same claims and are seeking similar redress to that sought by Plaintiff [Union]." Pls.' Mot. for Leave to File Second Am. Compl. at 4 (November 10, 2003). With leave of the Court, the Union and the individual Plaintiffs filed a Third Amended Complaint on July 9, 2004, adding five former CSOs as Plaintiffs, stating new claims under the Rehabilitation Act and the ADA, and joining Akal and MVM as Defendants. On February 4, 2005, again with leave of the Court, the Union and the fifty-four individual Plaintiffs filed a Fourth Amended Complaint, adding as Plaintiffs ten additional former CSOs and AGI as a Defendant.

On March 22, 2005, Akal filed a counterclaim against various individual CSOs alleging that they breached the hold harmless clause of the CBAs under which they worked.[7] Akal also filed a counterclaim against various individual CSOs alleging that they breached the no recourse clause of the CBAs under which they

---

[7] Akal filed this counterclaim against the following individual CSOs: Ruben Gonzales; James Lane; Donald Durham; Frank Browder, Jr.; Frank Hurza; James Ralph; Willie Rich; Dallas Murphy; Harvey Robideaux; Vernon Broad; Philip Elder; Jack Morehead; Robert Hubbard; Harvey Simmons; Frank Shaffer and Brian Smith.

worked.[8]  In its counterclaims, Akal seeks to enjoin Plaintiffs from proceeding with their claims and to be indemnified for all costs, fees, and damages that arise in litigating their claims.

On April 11, 2005, Plaintiffs filed the instant Motion to Dismiss.  Plaintiffs argue that Akal's counterclaims should be dismissed for three reasons.  First, they claim that Akal "failed to exhaust their administrative remedies prior to bringing each and every counterclaim."  Pl.s' Mot. at 1.  Second, they maintain that Akal's claims are untimely because they were brought outside the applicable six-month statute of limitations.  See id. at 2.  Third, they argue that Akal has failed to state a claim upon which relief can be granted.  Specifically, they argue that "[u]nder the plain meaning of the CBA language, the hold harmless clause does not apply to instances in which CSOs are discharged after being removed from the Judicial Security Contract by the USMS for failing the new medical/physical standards.  Because the hold harmless clause does not apply to Plaintiffs' discharges, [Akal] is not entitled to be held harmless and indemnified for claims based on those discharges."  Id.

## II.  STANDARD OF REVIEW

A motion to dismiss should only be granted "when it appears

---

[8] Akal filed this counterclaim against the following individual CSOs: Keith Morris; Michael Campbell; Roberto Torrez; Robert Rarick; Donald Johnson; Don Kemp; William Lambright; Byron Dahlen; John Scott and Harlan Coy.

beyond doubt that, under any reasonable reading of the complaint [or counterclaim], the plaintiff will be unable to prove any set of facts that would justify relief." Hishon v. King & Spaulding, 467 U.S. 69, 73 (1984).  Because such motions "summarily extinguish litigation at the threshold and foreclose the opportunity for discovery and factual presentation, [they] should be treated with the greatest of care." Haynesworth v. Miller, 820 F.2d 1245, 1254 (D.C. Cir. 1987).  Accordingly, the factual allegations of the counterclaim must be presumed true and liberally construed in favor of the plaintiff.  Shear v. Nat'l Rifle Ass'n of Am., 606 F.2d 1251, 1253 (D.C. Cir. 1979).

## III. ANALYSIS

Plaintiffs argue that Akal's counterclaims should be dismissed because Akal "failed to exhaust their administrative remedies prior to bringing each and every counterclaim." Pl.s' Mot. at 1. Specifically, Plaintiffs claim that Akal failed to grieve and arbitrate Plaintiffs' alleged breach of the CBAs. Akal argues that "[b]ecause [its] CBAs provided that only employees could grieve, [it] was not required to grieve or arbitrate before bringing counterclaims against the Plaintiffs."[9]  Def.'s Opp'n at 3.

---

[9]   Plaintiffs argue that Akal failed to submit its counterclaims to arbitration before filing suit in this Court. See Pl.s' Mot. at 7. Akal does not deny this assertion and there seems to be no dispute that it did not, in fact, submit its counterclaims to arbitration before filing them in this litigation.

Initially, it must be noted that Akal simply ignores the governing case law in this jurisdiction and relies on contrary case law from other circuits. As will be explained, the case law in this Circuit is overwhelmingly clear and compels the granting of Plaintniffs' Motion.

"'[A]rbitration is a matter of contract and a party cannot be required to submit to arbitration any dispute which he has not agreed so to submit.'" Air Line Pilots Ass'n v. Fed. Express Corp., 402 F.3d 1245, 1248 (D.C. Cir. 2005) (quoting AT&T Technologies, Inc. v. Communications Workers of Am., 475 U.S. 643, 648 (1986) (quoting United Steelworkers v. Warrior & Gulf Navigation Co., 363 U.S. 574, 582 (1960))). "'Unless the parties clearly and unmistakably provide otherwise, the question ... whether the parties agreed to arbitrate is to be decided by the court, not the arbitrator.'" Air Line Pilots Ass'n, 402 F.3d at 1248 (quoting AT&T Technologies, Inc. 475 U.S. at 649). "'[I]n deciding whether the parties have agreed to submit a particular grievance to arbitration, a court is not to rule on the potential merits of the underlying claims.'" Id.

Nonetheless, "the Supreme Court has consistently instructed that there is a strong presumption in favor of arbitration in labor disputes." United Parcel Serv., Inc. v. Int'l Bhd. of Teamsters, AFL-CIO, 859 F.Supp. 590, 594 (D.D.C. 1994) (citing AT&T Technologies, Inc., 475 U.S. at 650). This presumption is so

strong that an "'order to arbitrate the particular grievance should not be denied unless it may be said with positive assurance that the arbitration clause is not susceptible of an interpretation that covers the asserted dispute.  Doubts should be resolved in favor of coverage."'  Air Line Pilots Ass'n, 402 F.3d at 1248 (quoting Warrior & Gulf Navigation, 363 U.S. at 582-83).  Thus, "a collective bargaining agreement must be interpreted 'as imposing arbitration requirements on an employer unless "there is an express, flat limitation" that arbitration boards should consider only employee grievances.'" United Parcel Serv., Inc., 859 F.Supp. at 594 (quoting Domino Sugar v. Sugar Workers Local 392, 10 F.3d 1064, 1069 (4th Cir. 1993) (quoting Atkinson v. Sinclair Ref. Co., 370 U.S. 238, 243 (1962)) (emphasis in original).[10]  See Blake Const. Co., Inc. v. Laborers' Intern. Union of North America, AFL-CIO, 511 F.2d 324, 328, n.30 (D.C. Cir. 1974) (citing with

---

[10] In Atkinson, the Supreme Court held that the collective bargaining agreement in issue did not require the employer to submit its disputes to arbitration.  That agreement -- unlike the one at issue in this case -- explicitly specified that the arbitration board "shall consider only individual or local employee or local committee grievances."  Atkinson, 370 U.S. at 243 (emphasis added).  No such "flat limitation" exists in this case. Id.

In contrast, in Domino Sugar, the Court held that where a collective bargaining agreement containing language similar to that involved in this case, in that it "did not specifically indicate that the Company could request a grievance conference or arbitration" but "did not preclude[] the Company from pursuing these procedures," arbitration was required.  Domino Sugar, 107 F.3d at 1066.

approval H.K. Porter Co., Inc., Connors Steel Div., West Virginia Works v. Local 37, United Steel Workers of Am., AFL-CIO, 400 F.2d 691, 695 (4th Cir. 1968) (same), and cases cited therein). See also Warrior & Gulf Navigation, 363 U.S. at 584-85 ("In the absence of any express provision excluding a particular grievance from arbitration, we think only the most forceful evidence of a purpose to exclude the claim from arbitration can prevail[.]").

In the instant case, Section 5.3 provides in its introductory sentence that "[a]ll grievances shall be presented and processed in accordance with the following procedures" and that "[t]he parties shall make their best efforts to resolve any dispute on an informal basis."  Pl.s' Ex. 1, Section 5.3 (emphasis added).  This language is clearly broad and inclusive. See United Parcel Serv., Inc., 859 F.Supp. at 594 (citing AT&T Technologies, Inc., 475 U.S. at 650 (broad arbitration language in a CBA renders the presumption of arbitrability "particularly applicable")).  In addition, nothing contained in the procedural steps set forth in Section 5 expressly excludes arbitration of Akal's grievances against Union members. "Exclusion by implication, and the consequent nullification of those provisions which indicate the parties' intention to arbitrate, is contrary to our national labor policy." H.K. Porter Co., 400 F.2d at 695.

In short, Akal's arguments at the very most merely raise a doubt about whether the arbitration clause covers the dispute, but

our Court of Appeals has directed that any such doubt is to be resolved "in favor of coverage." Air Line Pilots Ass'n, 402 F.3d at 1248. Thus, the Court concludes that, due to the broad language in the CBAs and the absence of any limitation on their coverage, Akal cannot overcome the strong presumption in favor of arbitration in this case. See United Parcel Serv., Inc., 859 F.Supp. at 595; ITT World Communications, Inc. v. Communications Workers of Am., AFL-CIO, 422 F.2d 77, 82 (2d Cir. 1970) ("The combination of a broad arbitration clause and vague or no exclusionary language has usually ... led to arbitration.") (internal citations omitted).[11] Accordingly, Akal's counterclaims must be dismissed because Akal failed to exhaust its administrative remedies prior to filing suit in this Court.

Akal argues that "[i]f [] this court believes that the CBAs are ambiguous as to whether Akal needed to grieve, the court is bound to determine the meaning of the CBAs by turning to extrinsic evidence, including the parties' intent as expressed by past practice and negotiation history." Def.'s Opp'n at 4 (citing Marsans v. Communications Workers of Am., 1989 WL 43831 (D.D.C.)). According to Akal, "the evidence is that the parties' intent and

---

[11] Indeed, in fn. 4 of Washington Mailers Union No. 29 v. Washington Post Company, 233 F.3d 587, 592 (D.C. Cir. 2000), the Court of Appeals makes it clear that even the absence of a broad arbitration clause "does not negate the presumption of arbitrability." See Int'l Brotherhood of Elec. Workers Local 2188 v. W. Elec. Co., 661 F.2d 514, 516 n. 3 (5th Cir. 1981).

practice was that Akal was not to utilize the grievance mechanism." Def.s' Opp'n at 4.

In Marsans, the court turned to extrinsic evidence to assist in interpreting ambiguous provisions in CBAs. See id., 1989 WL 43831 at *6.  As Plaintiffs correctly point out, however, "the issue in Marsans did not involve the arbitrability of a CBA provision, but the interpretation of a substantive overtime provision, making its holding inapplicable in this case."  Pl.s' Reply at 7.  In addition, an "'order to arbitrate the particular grievance should not be denied unless it may be said with positive assurance that the arbitration clause is not susceptible of an interpretation that covers the asserted dispute.'" Air Line Pilots Ass'n, 402 F.3d at 1248 (quoting Warrior & Gulf Navigation, 363 U.S. at 582-83).  Thus, as Plaintiffs correctly point out, "even if this Court finds the language in the CBAs at issue ambiguous or susceptible of more than one interpretation, it still must hold that [Akal] must arbitrate the dispute before suing in court."[12]

---

[12] Akal cites Navarro v. Akal Security, Inc., 04cv280 (NLS) (S.D. Cal.) in support of its argument "that [it] was not obligated to grieve." Def.'s Opp'n at 4.  In Navarro, the plaintiff, a CSO, sued Akal for, among other things, discriminatory termination after he was medically disqualified by the USMS.  See Def.'s App. B. Akal eventually settled with the CSO, but it sued the CSO's union, the United Government Security Officers of America, Local 64, a local of the Plaintiff Union herein, for indemnification.  See Def.'s App. C.  Local 64 then sued the CSO, alleging that he had breached the CBA's indemnification provision.  See Def.'s App. D. Akal argues that "there is no record of [Local 64] ever having filed a grievance before bringing their [] claim.  If the
(continued...)

Pl.s' Reply at 7-8.

**IV. CONCLUSION**

Accordingly, for the reasons stated above, Plaintiffs' Motion to Dismiss Counterclaims Brought by Defendant Akal Security, or, in the Alternative, for Summary Judgment is **granted**.[13]

An Order will issue with this Memorandum Opinion.

Date: 2/1/06

/s/
GLADYS KESSLER
United States District Judge

**Copies to: attorneys on record via ECF**

---

[12](...continued)
Plaintiffs herein are correct -- and the CBAs at issue are not restricted just to employee grievances -- then how did the union in [Navarro] proceed with [its] claim for breach of the indemnification provision without first filing a grievance?" Def.'s Opp'n at 5.

While Akal's rhetorical question may not have the clearest answer, the "bottom line" is that the decision in Navarro, whatever it was, has no binding effect on this Court. Moreover, it does not appear that Plaintiff even raised the issue in that case.

[13] In light of the Court's holding supra that Akal's counterclaims must be dismissed because Akal failed to exhaust their administrative remedies prior to filing suit in this Court, it is unnecessary to address the timeliness of Akal's counterclaims or the applicability of the hold harmless clause to Plaintiffs' discharges.