```
                    UNITED STATES DISTRICT COURT
                    FOR THE DISTRICT OF COLUMBIA
```

| | |
|---|---|
| INTERNATIONAL UNION, UNITED   )<br>GOVERNMENT SECURITY OFFICERS )<br>OF AMERICA, <u>et</u> <u>al.</u>,          )<br>                               )<br>        **Plaintiffs**,         )<br>                               )<br>   v.                          )<br>                               )<br>JOHN CLARK, Acting Director    )<br>of the United States Marshals  )<br>Service, <u>et</u> <u>al.</u>,         )<br>                               )<br>        **Defendants**.         )<br>_____) | Civil Action No. 02-1484 (GK) |

## MEMORANDUM OPINION

Plaintiffs are the International Union, United Government Security Officers of America ("Union") and fifty-four individually named Court Security Officers ("CSOs").[1] Several claims are currently pending in this matter. First, the Union is pursuing a Fifth Amendment procedural due process claim against John Clark, Director of the United States Marshals Service ("USMS" or the

---

[1] The individual CSOs are Ann J. Barkley; Frank Brigance; Donald Durham; James E. Lane; Keith Morris; Harvey Simmons; Carl Akins; Thomas A. Alexander; Donald H. Allen; David A. Arriola; Vernon Broad; Frank Browder, Jr.; William J. Burge; Jimmy D. Burrow; Albert J. Busam; Clarence Bynum; Michael L. Campbell; Lawerence K. Churm; Harlen D. Coy; Byron G. Dahlen; Philip I. Elder; Robert Farnsworth; Gilmer S. Forbis; Ruben V. Gonzales; William F. Guthrie; John Hansen; Frank Hruza; Robert Hubbard; Donald W. Johnson; Don E. Kemp; James D. Kimbrel; Walter E. Lamb; William P. Lambright; Monty L. Laughlin; Roberto Lebron; Stephen F. McDonald; Chester L. McKune; Jack C. Morehead; Dallas K. Murphy; Miller Pearson; James Ralph; Robert Rarick; Ronald F. Ray; Willie Rich; Harvey Robideaux; Felipe Jorge-Rodriguez; Thomas J. Roy; John B. Scott; Frank Shaffer; Rhys Sirjane; Brian J. Smith; Donald Smith; Fred A. Thatcher; and Roberto Torrez.

"agency"), challenging the modified medical fitness-for-duty standards USMS began applying to CSOs in 2001. Second, the fifty-four CSOs, in their individual capacities, are pursuing Fifth Amendment due process claims against the USMS and disability discrimination claims against Akal Security, Inc. ("Akal"), MVM Security Services, Inc. ("MVM"), and Ares Group Incorporated ("AGI"), under the Americans with Disabilities Act ("ADA"), 42 U.S.C. §§ 12101, et seq..[2] Third, and finally, a proposed class of CSOs seeks to pursue a class-wide claim against USMS under the Rehabilitation Act, 29 U.S.C. §§ 701 et seq..

This matter is now before the Court on Plaintiff's Second Motion for Class Certification [Dkt. No. 139]. Upon consideration of the Motion, Opposition, Reply, and the entire record herein, and for the reasons stated below, Plaintiff's Motion is hereby **denied**.

I.   BACKGROUND

   A.   Facts[3]

      1.   **The judicial security contracts**

USMS, a division of the Department of Justice, is a federal

---

[2] On June 13, 2005, the individual CSOs voluntarily dismissed their claims under the Rehabilitation Act against Akal and AGI. See Dkt. Nos. 159 and 160. On March 30, 2005, the Court dismissed the individual CSOs' claims under the Rehabilitation Act against MVM. See Dkt. No. 134 (granting MVM's Motion to Dismiss Count II of Plaintiffs' Third Amended Complaint or, in the Alternative, for Summary Judgment).

[3] Unless otherwise noted, the facts set forth herein are undisputed.

law enforcement agency with statutory duties that include providing security to federal courthouses and courtrooms.  See 28 U.S.C. § 566(a).  It performs these duties, in part, by contracting for the services of CSOs with private security companies ("contractors") including Defendants Akal, MVM, and AGI, which currently hold "judicial security contracts" in all twelve federal Circuits.  See 28 U.S.C. § 604(a)(22); Fourth Am. Compl. at 12-13.

The CSOs are not considered federal employees; they are employees of private companies such as Akal, MVM, and AGI who are designated to serve as CSOs pursuant to those companies' contracts with USMS.  See Fourth Am. Compl. ¶ 21.  All of the individuals named as Plaintiffs in this action are members of the Union, which represents contract federal security officers, including CSOs, and negotiates collective bargaining agreements ("CBAs") with the contractors that "determine the terms and conditions of their employment."  Id. ¶¶ 4, 21.

Pursuant to their judicial security contracts with USMS, the contractors "provide all necessary manpower, supervision, transportation, equipment, and clothing, not provided by the Government . . . to perform court security services for each USMS district covered by [the relevant] contract."  Def.'s Mot. for J. on the Pleadings or Summ. J. [Dkt. No. 171], Farmer Decl. Ex. A, Twelfth Circuit Contract with MVM § C-2 (hereinafter "Twelfth Circuit Contract").  Among other personnel, the contractors must

provide "qualified CSOs at each district facility designated by the Government" to guard courthouse entrances, screen visitors, provide security in courtrooms, and escort judges, courthouse personnel, and jurors, as needed. Id. § C-5(d)(1).

USMS determines the qualifications CSO candidates must meet and sets them forth in the contracts. These include "at least three calendar years of verifiable experience as a certified law enforcement officer or its military equivalency." Id. § C-6(6). In addition, CSOs must demonstrate weapons proficiency and satisfy certain physical fitness and medical standards. See id. §§ C-6 - C-25. CSOs who fail to meet such standards "may be removed from performing services for the Government . . . upon written request of [USMS]." Id. § H-3(a). Specifically, the contracts give USMS "the right at all times to determine the suitability of any Contractor employee to serve as a CSO," id. § H-3(b), and provide that "[a]ny decision to continue a Contractor employee in a CSO capacity will be made solely by the Judicial Protective Services ["JPS"] Program [of the USMS] on a case-by-case basis." Id.

### 2. The modified fitness for duty medical standards

In 2000, the United States Public Health Service ("PHS"), Office of Federal Law Enforcement Medical Programs, conducted a job function analysis of the CSO position. In January 2001, as a result of that analysis, USMS modified the medical fitness for duty standards for CSOs. It then implemented those standards "by

-4-

advising the [contractors] that it was modifying its [judicial security contracts] and that it would require full compliance with the new medical standards as to both their present and future CSO personnel." Pls.' Statement of Undisputed Material Facts ¶ 7.

The judicial security contracts require all prospective CSOs to pass the required pre-employment medical exam. In addition, they require all current CSOs to pass an annual medical re-exam. See Twelfth Circuit Contract § C-8(a). The procedure is the same for both the pre-employment medical exam and the annual medical re-exam.

First, an examining physician who is selected by the contractor and approved by the PHS, and who specializes in occupational medicine for federal law enforcement officers, performs a comprehensive medical exam of the CSO. Pls.' Statement of Undisputed Material Facts ¶ 16. The examining physician then completes a Certificate of Medical Examination ("Certificate"), documenting the results of the exam. Id. ¶ 17. The Certificate, along with any other related documentation (e.g., EKG data or blood test results), is then provided to the contractor, who forwards it to the USMS's JPS Office. Id. ¶ 18.

Second, USMS ensures that all materials are complete and then forwards the file to the PHS, where it is examined by a "reviewing physician" who is experienced in occupational medicine, particularly as it relates to law enforcement occupations.

Id. ¶ 19.  The reviewing physician can make one of two findings: (1) the CSO is medically qualified; or (2) additional information is needed in order for the reviewing physician to make a finding as to qualification.

Third, if the reviewing physician determines that additional information is needed, the contractor is notified and has 30 days to provide such additional information or otherwise respond to the reviewing physician's concerns.  Id. ¶ 20.  Such additional information may include, inter alia, information from the CSO's treating physician or from a specialist.  Id. ¶ 21.

If the USMS receives no such additional medical information within the allotted time, it sends a disqualification letter to the contractor requesting that it remove the CSO from the contract.  If the USMS receives additional medical information, it forwards it to the reviewing physician.  If, after examining the complete medical file, the reviewing physician finds that the CSO is not medically qualified, the USMS sends a disqualification letter to the contractor requesting that it remove the CSO from the contract.  Id. ¶ 23.

All of the individual CSOs named as Plaintiffs in this action have been medically disqualified by USMS and removed from judicial security contracts on that basis.  Id. ¶ 12.

### B.  Procedural History

On July 26, 2002, the Union brought this action against USMS,

claiming that the modified medical fitness for duty standards deprived the CSOs of procedural due process and violated their rights under the notice and comment requirements of the Administrative Procedure Act ("APA"), 5 U.S.C. §§ 706, et seq. On August 28, 2003, the Court granted in part and denied in part USMS's Motion to Dismiss, concluding that the Union had stated a valid Fifth Amendment procedural due process claim but dismissing its APA claim. See Int'l Union, United Gov't Sec. Officers of America v. USMS, No. 02-CV-1484 (D.D.C. Mem. Op. Aug. 28, 2003).

On December 17, 2003, the Court granted the Union leave to file a Second Amended Complaint in order to add thirty-eight former CSOs as Plaintiffs. These individually-named CSO Plaintiffs asserted that they have "the same claims and are seeking similar redress to that sought by Plaintiff [Union]." Pls.' Mot. for Leave to File Second Am. Compl. at 4 (November 10, 2003). With leave of the Court, the Union and the individual Plaintiffs filed a Third Amended Complaint on July 9, 2004, adding five former CSOs as Plaintiffs, stating new claims under the Rehabilitation Act and the ADA, and joining Akal and MVM as Defendants. On February 4, 2005, again with leave of the Court, the Union and the fifty-four individual Plaintiffs filed a Fourth Amended Complaint, adding ten additional former CSOs as Plaintiffs and AGI as a Defendant.

On March 22, 2005, Akal filed counterclaims against various individual CSOs alleging that they breached the hold harmless and

no recourse clauses of the CBAs under which they worked.  In its counterclaims, Akal sought to enjoin Plaintiffs from proceeding with their claims and to be indemnified for all costs, fees, and damages that arise in litigating such claims.  On February 1, 2006, the Court dismissed Akal's counterclaims, finding that Akal had impermissibly failed to exhaust its administrative remedies.  See Int'l Union, United Gov't Sec. Officers of America v. USMS, No. 02-CV-1484 (D.D.C. Mem. Op. Feb. 1, 2006).[4]

The fifty-four individual Plaintiffs filed the instant Motion on April 20, 2005, seeking to pursue their Rehabilitation Act claims against USMS as a class action pursuant to Federal Rule of Civil Procedure 23.[5]  Plaintiffs estimate that the proposed class would number between 200 and 300 individuals and define its membership as follows:

> All CSOs in the USMS Judicial Security Program who worked at locations governed by Judicial Security Contracts between the USMS and the Employers, the CSOs' direct employers, and who were terminated by the Employers from their position as CSO after being medically disqualified and removed from the Judicial Security Contract by the USMS.

---

[4] AGI, which also had filed counterclaims, voluntarily dismissed such claims on October 18, 2005.  See Dkt. No. 168.

[5] On May 20, 2005, Plaintiffs voluntarily withdrew the class allegations against Defendants Akal, MVM, and AGI.  See Pls.' Mot. to Dismiss Voluntarily Pls.' Second Mot. for Class Certification. As a result, Plaintiffs now seek class certification only to pursue their Rehabilitation Act claims against Defendant USMS.  Many individual Plaintiffs are, however, maintaining Rehabilitation Act and ADA claims against the contractors on their own behalf either in this case or in other lawsuits in other courts.

Pls.' Second Mot. for Class Certification at 2.  Plaintiffs propose six class representatives: Ann Barkley, Frank Brigance, Donald Durham, James Lane, Keith Morris, and Harvey Simmons.  <u>Id.</u>  Each proposed representative was terminated after being medically disqualified pursuant to the modified medical fitness for duty standards.

While the instant Motion was pending, USMS requested, and the Court granted, leave to file a Motion for Judgment on the Pleadings or, in the Alternative, Summary Judgment on Plaintiffs' Rehabilitation Act claims.  <u>See</u> Dkt. No. 171.  On September 11, 2006, the Court granted Defendant's Motion in part, holding that while Plaintiffs are not precluded as a matter of law from asserting claims against USMS under Section 501 of the Rehabilitation Act ("Section 501"), USMS was nevertheless entitled to judgment on the pleadings on the claims of fifty Plaintiffs.[6] <u>See</u> <u>See</u> <u>Int'l Union, United Gov't Sec. Officers of America v. USMS</u>, No. 02-CV-1484 (D.D.C. Mem. Op. Sept. 11, 2006).  Accordingly, of the fifty named Plaintiffs in this case, only four may proceed on their Section 501 claims.[7]  Three of the proposed class representatives—Donald Durham, James Lane, and Keith Morris—are

---

[6]  Those individuals either failed to timely exhaust their administrative remedies, as Section 501 requires, or were barred by <u>res judicata</u> from litigating their claims in this case.

[7]  They are: Frank Brigance, Harvey Simmons, Roberto LeBron, and Frank Shaffer.

among the individual Plaintiffs whose Section 501 claims are precluded.

**II.  STANDARD OF REVIEW**

Federal Rule of Civil Procedure 23(a) requires a plaintiff to satisfy the following four requirements before a class can be certified: (1) the class must be so numerous that joinder of all members is impracticable ("numerosity"); (2) there must be questions of law or fact common to the class ("commonality"); (3) the claims or defenses of the representative parties must be typical of the claims or defenses of the class ("typicality"); and (4) the representative parties, and their counsel, must fairly and adequately protect the interests of the class ("adequacy").  See Fed. R. Civ. P. 23(a).  In addition, the plaintiff must satisfy one of the three requirements of Rule 23(b).

The plaintiff bears the burden of proof on each element of Rule 23.  See McCarthy v. Kleindienst, 741 F.2d 1406, 1414, n.9 (D.C. Cir. 1984).  "A district court exercises broad discretion in deciding whether to permit a case to proceed as a class action." Hartman v. Duffey, 19 F.3d 1459, 1471 (D.C. Cir. 1994) (citing Bermudez v. Dep't of Agric., 490 F.2d 718, 725 (D.C. Cir. 1973)). See also Gulf Oil Co. v. Bernard, 452 U.S. 89, 100 (1981); Califano v. Yamasaki, 442 U.S. 682, 701 (1979).

**III. ANALYSIS**

Plaintiffs argue that the proposed class satisfies the four requirements of Rule 23(a) and seek certification of a hybrid class action under Rules 23(b)(2) and 23(b)(3).[8]  See Pls.' Second Mot. for Class Certification at 2.  Defendant USMS challenges Plaintiff's arguments on each of the Rule 23 requirements and notes that the Court could deny class status on "any of [the Rule 23] grounds."  Def.'s Opp'n at 3.  Defendant USMS is correct as to the latter point.  Because the instant Motion can be resolved with reference to only two of the Rule 23 requirements (the numerosity

---

[8] Class certification pursuant to Rule 23(b)(2) is appropriate where "the party opposing the class has acted or refused to act on grounds generally applicable to the class, thereby making appropriate final injunctive relief or corresponding declaratory relief with respect to the class as a whole."  Fed. R. Civ. P. 23(b)(2).  Although Rule 23(b)(2) does not preclude an award of money damages to plaintiffs, it is used to certify classes where the requested relief is primarily injunctive or declaratory.  See Fed. R. Civ. P. 23 (Advisory Committee Notes).

Rule 23(b)(3), on the other hand, governs the certification of class actions in which the sole or primary relief sought is money damages.  To satisfy that Rule's more stringent standards, plaintiffs must establish that "questions of law or fact common to the members of the class predominate over any questions affecting only individual members and that a class action is superior to other available methods for the fair and efficient adjudication of the controversy."  Fed. R. Civ. P. 23(b)(3).

Our Court of Appeals has ruled that the categories of class actions under Rule 23(b) "are not mutually exclusive and [that] a class may be certified under more than one category."  Eubanks v. Billington, 110 F.3d 87, 91 (D.C. Cir. 1997).  Accordingly, although it is unusual, a court in this Circuit "may adopt a hybrid approach, certifying a (b)(2) class as to the claims for declaratory or injunctive relief and a (b)(3) class as to the claims for monetary relief."  Id.

requirement of Rule 23(a)(1) and the adequacy of representation requirement of Rule 23(a)(4)), it is not necessary to address the remaining Rule 23 factors.

### A. Plaintiffs Cannot Establish that the Proposed Class Is "So Numerous that Joinder of All Members Is Impracticable"

Rule 23(a)(1) allows a court to certify a class if it determines that the class would be so numerous as to make "joinder of all members is impracticable." See Fed. R. Civ. P. 23(a)(1). The Rule does not mandate use of a mechanical formula for determining numerosity. See General Tel. Co. of the Northwest, Inc. v. EEOC, 446 U.S. 318, 330 (1980). Instead, it gives courts discretion to decide whether using the class action mechanism would serve the interests of judicial economy and efficiency. See Council of and for the Blind of Delaware County Valley, Inc. v. Regan, 709 F.2d 1521, 1544 n.48 (D.C. Cir. 1983) (Robinson, J., concurring in part and dissenting in part).

There are currently fifty-four Plaintiffs in this case; as noted above, however, only four are eligible for inclusion in the proposed class. While the parties agree that there are between 200 and 300 CSOs who were disqualified pursuant to the modified medical fitness for duty standards, only those individuals who have timely exhausted their remedies at the administrative agency level can maintain Section 501 claims against USMS and thus can be included in the class. It is uncertain how many such individuals exist

beyond the four that are currently named as Plaintiffs. That number is likely to be relatively low, however, for at least two reasons.

First, less than eight percent of the Plaintiffs currently participating in this litigation timely exhausted their administrative remedies, even though many had secured legal representation before the deadline for doing so had passed.[9] There is no reason to believe that a larger proportion of any additional Plaintiffs who might join this litigation will have exhausted their administrative remedies.

Second, Plaintiffs' counsel has amended the Complaint to add new Plaintiffs three times since this case was filed. During the briefing of the instant Motion, Plaintiffs' counsel represented that they intended to "seek leave to file a Fifth Amended Complaint [by August 19, 2005] to add individual . . . CSOs who have exhausted their administrative remedies and need to file claims before the statute of limitations run[s]." See Reply at 10, n.1. In the year since Plaintiffs' counsel made that statement, however, they have not attempted to amend the Complaint or otherwise

---

[9] Our Court of Appeals has held that plaintiffs who retain counsel before the deadline for filing an administrative complaint has passed, but still neglect to file such a complaint, do not "exercise due diligence in preserving [their] legal rights" and, absent "affirmative misconduct" by the defendant, may not rely on equitable tolling or estoppel as defenses. See Washington v. Washington Metro. Transp. Auth., 160 F.3d 750, 753-54 (D.C. Cir. 1998) (citing Irwin v. Department of Veterans Affairs, 498 U.S. 89, 96 (1990).

indicated that there are any additional CSOs, whether eligible for membership in the proposed class or not, who wish to join this litigation. As a result, estimating how many additional Plaintiffs, if any, might qualify for inclusion in the class would be pure speculation. For purposes of determining the size of a proposed class, "conjecture, without more, is insufficient." Pigford v. Glickman, 182 F.R.D. 341, 347 (D.D.C. 1998) (citing Marcial v. Coronet Ins. Co., 880 F.2d 954, 957 (7th Cir.1989); see also Kifafi v. Hilton Hotels Ret. Plan, 189 F.R.D. 174, 176 (D.D.C. 1999) (noting that there must be a "reasonable basis" for estimating the size of a proposed class).

Accordingly, even accepting that there may be additional individuals who could qualify for membership in the proposed class, beyond the four currently present, there is no basis on which the Court could reasonably conclude that the class would be so numerous as to make joinder impracticable or that the class action mechanism would serve the interests of judicial economy and efficiency. Plaintiffs have therefore failed to satisfy the numerosity requirement of Rule 23(a)(1).

**B. The Named Representatives Cannot Adequately Represent the Proposed Class Because They Failed to Exhaust the Class-Wide Administrative Remedies Required Under Section 501**

Rule 23(a)(4) requires a court to find that "the representative parties will fairly and adequately protect the interests of the class." Fed. R. Civ. P. 23(a)(4). Among the

-14-

factors a court must consider are "the quality of class counsel, any disparity in interest between class representatives and [class] members . . ., communication between class counsel and the class, and the overall context of the litigation." Twelve John Does v. District of Columbia, 117 F.3d 571, 575 (D.C. Cir. 1998).

Section 501 requires an aggrieved party to exhaust the administrative remedies available at the agency level before filing a civil action.  See 29 U.S.C. § 794a(a)(1).  This exhaustion requirement applies both to individual claims, id., as well as class complaints.  See 29 C.F.R. § 1614.204.  As the Court discussed at length in its September 11, 2006 Memorandum Opinion, our Court of Appeals recently held that exhaustion of administrative remedies is a jurisdictional prerequisite to any civil action under Section 501.  See Spinelli v. Goss, 446 F.3d 159, 162 (D.C. Cir. 2006).

While Spinelli concerned an individual claim, there is nothing in the opinion to suggest that a different result would apply to a class complaint.  On the contrary, the Court of Appeals explains quite clearly that exhaustion is mandatory under the Rehabilitation Act and that the failure of a plaintiff, or, presumably, a class, to exhaust his administrative remedies compels dismissal of a Section 501 claim.  See id.

There is no dispute that none of the proposed class representatives, nor any other member of the class, filed an

administrative complaint with USMS prior to initiating this suit, let alone fully exhausted such a complaint at the agency level. While Plaintiffs initially attempted to excuse that failure by invoking the doctrine of futility, see Reply at 25, Spinelli holds that "a court may not read futility or other exceptions into statutory exhaustion requirements."  Spinelli, 446 F.3d at 162. Because the proposed class representatives failed even to bring a class complaint at the administrative agency level, a failure that has the effect of depriving the Court of jurisdiction over the claim they wish to maintain as a class action, they cannot "fairly and adequately protect the interests of the class."[10]  Consequently, Plaintiffs have not satisfied the adequacy requirement of Rule 23(a)(4).

## IV. CONCLUSION

For the foregoing reasons, Plaintiff's Motion for Class Certification [Dkt. No. 139] is **denied.**

---

[10]  The Court notes that because Spinelli was decided well after this case was filed, the proposed class representatives and their counsel could not possibly have known that the futility defense would be unavailable to them.  Nevertheless, the reality remains that they failed to take the first step required to move this case forward as a class action—filing an administrative class complaint.

...

An Order will issue with this Memorandum Opinion.

September 12, 2006

/s/  
Gladys Kessler  
United States District Judge

**Copies to**: **attorneys on record via ECF**