**UNITED STATES DISTRICT COURT**
**FOR THE DISTRICT OF COLUMBIA**

———————————————————— )
                                         )
INTERNATIONAL UNION, UNITED              )
GOVERNMENT SECURITY OFFICERS             )
OF AMERICA, et al.,                      )
                                         )
      Plaintiffs,                   )
                                         )
    v.                               )    **Civil Action No.**
                                         )    **02-1484 (GK)**
JOHN CLARK, in his official              )
capacity as Director of the              )
United States Marshals                   )
Service, et al.,                         )
                                         )
      Defendant.                    )
———————————————————— )


**MEMORANDUM OPINION**


    Plaintiffs in this case are five individual Court Security

Officers ("CSOs") who were medically disqualified and terminated.[1]

They allege that the United States Marshals Service ("USMS")

violated their constitutional rights in causing their terminations.

Defendant is John Clark, in his official capacity as Director of

———————————————

[1]    This case originally involved two sets of plaintiffs.  The
first set, the plaintiffs in Int'l Union, United Gov't Sec.
Officers of Am. v. Clark, No. 02-1484, (D.D.C. Sept. 9, 2002) [Dkt.
No. 2] were International Union, United Government Security
Officers of America ("the Union") and 65 CSOs who filed the
original complaint.  The second set, the plaintiffs in Byron Neal
v. Benigno G. Reyna, No. 05-0007 (D.D.C. Jan. 4, 2005) [Neal Dkt.
No. 3] ("Neal plaintiffs"), were six CSOs who filed a separate
complaint.  Neal was later consolidated with Int'l Union.  For
reasons explained below, only five plaintiffs now remain: James
Dolnack, Herman Edwards, Gary Erickson, Wayne Mize, and Byron Neal.
These are the "Plaintiffs" referred to hereafter.

the USMS.[2]  This matter is now before the Court on the remaining parties' Cross-Motions for Summary Judgment [Dkt. Nos. 349 & 358].

Upon consideration of the Motions, Oppositions, Replies, and the entire record herein, and for the reasons set forth below, Defendant's Motion for Summary Judgment on Plaintiffs' Due Process Claims is **granted** and Plaintiffs' Cross-Motion for Summary Judgment is **denied**.

## I.    BACKGROUND

### A.    Factual Background[3]

This case has a long and complex factual background, which is set out in full in the Court's 2010 decision in Int'l Union, United Gov't Sec. Officers of Am. v. Clark ("Int'l Union"), 706 F. Supp. 2d 59 (D.D.C. 2010).  The following is a brief summary of the facts directly relevant to the due process claim of the five remaining Plaintiffs now before the Court.

To "provide for the security of" federal courthouses, 28 U.S.C. § 556(A), the USMS contracts with private security companies.  Int'l Union, 706 F. Supp. 2d at 61.  The private

---

[2]    This case originally involved three defendants.  In addition to John Clark, in his official capacity as Director of the USMS, Defendants were Akal Security, Inc. ("Akal") and MVM, Inc. ("MVM") [Dkt. Nos. 59 & 60].  All claims against Defendants Akal and MVM have either been dismissed, denied on summary judgment, or settled.

[3]    Unless otherwise noted, the facts set forth herein are drawn from the parties' Statements of Undisputed Material Facts [Dkt. Nos. 358 & 361].

security companies then enter into collective bargaining agreements ("CBAs") with the Union which the CSOs are members of.  The CBAs include language governing the conditions for suspension and termination, among other subjects.  Notably, the CBAs contain provisions prohibiting, except in specified circumstances, the suspension or dismissal of an employee without just cause ("just-cause provision").[4]  See id.

The CBAs also require CSOs to have a physical examination during the initial clearance for employment, conducted by the private security company's doctors who are approved by the United States Public Health Service's ("USPHS") Office of Federal Law Enforcement Medical Program.  USPHS doctors review the medical records and either certify the CSO as medically qualified for duty or request more information.  If more information is requested, a CSO is given 30 days to respond to the prescribed list of

---

[4]   A suspension or termination for just cause has been defined as "one which is not for any arbitrary, capricious, or illegal reason and which is one based on facts (1) supported by substantial evidence and (2) reasonably believed by the employer to be true." Podish v. UNC Lear Siegler, 161 F.3d 13 (9th Cir. 1998); see also Spano v. JP Morgan Chase Bank, N.A., Civil Action No. 2:09-cv-04055 (DMC)(JAD), 2011 WL 6934837, at *6 (D.N.J. Dec. 30, 2011) ("A discharge for just cause is defined as one that is based on facts that are (1) supported by substantial evidence and (2) are reasonably believed by the employer to be true and also (3) is not for any arbitrary, capricious, or illegal reason." (internal quotation omitted)); Autohaus, Inc. v. BMW of N. Am., Inc., No. CIV. A. 92-10403-MA, 1993 WL 1503945, at *8 (D. Mass. Dec. 23, 1993) ("The Massachusetts Supreme Judicial Court has noted that a [d]ischarge for "just cause" is to be contrasted with a discharge on unreasonable grounds or arbitrarily, capriciously, or in bad faith." (internal quotation omitted)).

additional medical examinations or medical information on the USPHS doctors' review form.  If USPHS doctors determine that a CSO is not medically qualified for duty after the CSO has had an opportunity to respond, the USMS sends a medical disqualification letter to the private security company requesting that the CSO be removed from the private security company's contract with the USMS and that an application for a replacement be submitted within 14 days.

In 1997, the Judicial Conference of the United States ("Judicial Conference") expressed concern that CSOs were not physically capable of responding to security threats.  Int'l Union, 706 F. Supp. 2d at 62.  In 1998, the Judicial Conference began to inquire into the medical standards used to evaluate CSOs.  In 1999, the Judicial Conference ordered the USPHS to conduct a job function analysis of CSOs.  In 2000, the USPHS presented new medical standards to the Judicial Conference which it adopted.  In 2002, the USMS modified its contracts with the private security companies and required full compliance by all CSOs with the new medical standards and related procedures.

Under the new procedures, the private security companies must submit annual medical certificates for CSOs.  As with the initial medical determination, if USPHS doctors determine during the annual medical review that a CSO is not medically qualified for duty, and after the CSO has had an opportunity to respond, the USMS sends a medical disqualification letter to the private security company

requesting that the CSO be removed from the private security
company's contract with the USMS and that an application for a
replacement be submitted within 14 days.

The five remaining Plaintiffs now before the Court were all
medically disqualified and terminated under these annual medical
review procedures.

**B.   Procedural Background**

On September 9, 2002, the Int'l Union plaintiffs filed their
Amended Complaint alleging that their medical disqualifications and
terminations violated the Fifth Amendment's due process clause, as
well as certain statutes.  Int'l Union, United Gov't Sec. Officers
of Am. v. Clark, No. 02-1484, (D.D.C. Sept. 9, 2002) [Dkt. No. 2].

On December 2, 2002, Defendant filed his Motion to Dismiss the
Int'l Union plaintiffs' due process claim [Dkt. No. 7].  On August,
28, 2003, the Court denied Defendant's Motion to Dismiss the Int'l
Union plaintiffs' due process claim, finding that the Int'l
Union plaintiffs had stated a valid due process claim based on the
just-cause clauses in the CBAs [Dkt. Nos. 24 & 25].

On January 4, 2005, Plaintiffs James Dolnack, Herman Edwards,
Gary Erickson, Calvert Harvey, Wayne Mize, and Byron Neal filed
their Amended Complaint alleging that their medical
disqualifications and terminations violated the Fifth Amendment's
due process clause, as well as certain statutes.  Byron Neal v.

-5-

Benigno G. Reyna ("Neal"), No. 05-0007 (D.D.C. Jan. 4, 2005) [Neal Dkt. No. 3].

On October 12, 2006, Defendant filed his Motion to Dismiss Plaintiffs' due process claim in the Amended Complaint [Neal Dkt. No. 21]. On April 10, 2010, the Court denied Defendant's Motion to Dismiss Plaintiffs' due process claim. Int'l Union, United Gov't Sec. Officers of Am. v. Clark, 704 F. Supp. 2d 54, 60-63 (D.D.C. 2010).

On February 6, 2007, Plaintiffs' case was consolidated with the Int'l Union case [Neal Dkt. No. 23; Dkt. No. 205].

On January 10, 2008, Defendant filed his Motion for Summary Judgment on the Int'l Union plaintiffs' due process claim [Dkt. No. 263]. On February 19, 2008, the Int'l Union plaintiffs filed their Cross-Motion for Summary Judgment [Dkt. Nos. 268 & 270]. Briefing was completed on March 28, 2008 [Dkt. Nos. 272-274]. On April 15, 2010, the Court granted Defendant's Motion for Summary Judgment on the Int'l Union plaintiffs' due process claim [Dkt. No. 291]. The Court held that, while the Int'l Union plaintiffs had a property interest in their continued employment, they received due process before being medically disqualified and terminated. Int'l Union, 706 F. Supp. 2d at 71.

On September 29, 2011, Defendant filed the Motion for Summary Judgment now before the Court on Plaintiffs' due process claim [Dkt. No. 349]. Plaintiffs filed their Cross-Motion for Summary

Judgment on October 24, 2011 [Dkt. No. 357].   Defendant filed his
Reply on November 8, 2011 [Dkt. No. 361].

In a Joint Status Report submitted on June 4, 2012, Plaintiffs
and Defendant stated that they had executed agreements settling all
other claims.   The sole claim remaining is the due process claim
brought by Plaintiffs James Dolnack, Herman Edwards, Gary Erickson,
Wayne Mize, and Byron Neal against Defendant.[5]

## II.   STANDARD OF REVIEW

Summary judgment is appropriate "when the pleadings,
depositions, answers to interrogatories and admissions on file,
together with the affidavits, if any, show that there is no genuine
issue as to any material fact and that the moving party is entitled
to judgment as a matter of law."   Fed. R. Civ. P. 56(c).

An issue is "genuine" if "the evidence is such that a
reasonable jury could return a verdict for the nonmoving party."
Arrington v. United States, 473 F.3d 329, 333 (D.C. Cir. 2006)
(quoting Anderson v. Liberty Lobby, Inc., 477 U.S. 242, 248
(1986)).   A fact is "material" if it might affect the outcome of
the action under the governing law.   Anderson, 477 U.S. at 248.

The Supreme Court has emphasized that "at the summary judgment
stage, the judge's function is not . . . to weigh the evidence and

_____

[5]    On December 21, 2011, Plaintiff Calvert Harvey voluntarily
dismissed all claims against Defendant [Dkt. No. 365].

determine the truth of the matter, but to determine whether there is a genuine issue for trial." Anderson, 477 U.S. at 248.

**III. ANALYSIS**

Defendant maintains that Plaintiffs do not have a property interest in their continued employment that entitles them to due process with regard to medical disqualification and termination. Def.'s Mem. in Supp. of His Mot. for Summ. J. on the Due Process Claims ("Def.'s Mot.") at 4 [Dkt. No. 349]. Defendant argues that, regardless of the terms in the CBAs, the CBAs do not and cannot impose due process obligations on the USMS. Id.

In the alternative, Defendant maintains that even if Plaintiffs have a property interest in their continued employment, they were provided with the process that was due. Def.'s Mot. at 4. Defendant relies heavily on the fact that the Court granted Defendant's Motion for Summary Judgment on the Int'l Union plaintiffs' due process claim. Id. at 1. The Court held that the process that the Int'l Union plaintiffs received when they were medically disqualified and terminated was constitutionally sufficient. Id. Defendant argues that the Int'l Union plaintiffs and Plaintiffs now before the Court received the same process, and therefore, the Court's earlier ruling must be followed. Id.

**A. Plaintiffs' Initial Concessions**

Plaintiffs concede that "it is undisputed that the facts, circumstances, and issues presented by these Plaintiffs' due

process claims are identical to those presented by the [Int'l Union plaintiffs] and Plaintiffs understand that the Court will most likely rule on these Motions in the same manner as it did for the previous dispositive motions." Pls.' Opp'n to Def.'s Mot. for Summ. J. and Cross-Mot. for Summ. J. at 1-2 [Dkt. No. 357].[6]

**B. Law of the Case Doctrine Does Not Compel the Conclusion that Plaintiffs Have a Property Interest in Their Continued Employment**

Plaintiffs maintain that the Court's 2003 decision denying Defendant's Motion to Dismiss the Int'l Union plaintiffs' claims resolves the issue of whether Plaintiffs have a property interest in their continued employment. Pls.' Mem. in Supp. of Their Opp'n to Def.'s Mot. for Summ. J. and Cross-Mot. for Summ. J. ("Pls.' Cross-Mot.") at 10-13. Plaintiffs argue that the Court should "deny Defendant's Motion [for Summary Judgment] and reaffirm it [sic] decision that the individual CSOs represented by Plaintiff UGSOA have a property interest in their employment." Id. at 13.

However, the Court has previously considered and rejected this argument. Int'l Union, 706 F. Supp. 2d at 64-65. The Supreme Court has held that denial of a motion to dismiss is an

---

[6] Plaintiffs request that the Court "review and perhaps reconsider its prior ruling" on the issue of whether Plaintiffs received due process. Pls.' Opp'n to Def.'s Mot. for Summ. J. and Cross-Mot. for Summ. J. at 2 [Dkt. No. 357]. No Plaintiff has filed a Motion for Reconsideration under the applicable Rules of Civil Procedure or attempted to make the showing that such a motion requires. Therefore, the Court will not grant the request to "perhaps reconsider."

interlocutory order.  See Office of Senator Mark Dayton v. Hanson, 550 U.S. 511, 515 (2007); EAW Group, Inc. v. Republic of Gambia, No. 02-2425, 2007 WL 1297180, at *2 (D.D.C. May 1, 2007).  Our Court of Appeals has stated that "[i]nterlocutory orders are not subject to law of the case doctrine and may always be reconsidered prior to final judgment." Langevine v. Dist. of Columbia, 106 F.3d 1018, 1023 (D.C. Cir. 1997); see also Safir v. Dole, 718 F.2d 475, 481 n.3 (D.C. Cir. 1983) (noting that the law of the case doctrine is discretionary).

Furthermore, Plaintiffs themselves note that Defendant introduced 26 CBAs, the contracts under which Plaintiffs were employed by the private security companies, after the Court's 2003 decision.  Pls.' Cross-Mot. at 11.  The Court's 2003 decision discussed only the just-cause clauses in the CBAs.  It did not discuss the sections of the CBAs introduced as evidence after the Court's 2003 decision.  As previously explained, "Defendant presented additional facts that could have a substantial impact on the question of whether a property interest exists." Int'l Union, 706 F. Supp. 2d at 65.

In sum, application of the law of the case doctrine is discretionary, and cannot be invoked to limit the Court's ability to reconsider interlocutory orders when new evidence is introduced after a motion to dismiss has been decided.  Thus, the Court's 2003 decision does not foreclose Defendant from raising his due process

defense again on a motion for summary judgment.  <u>See</u> 10A Charles Alan Wright, Arthur R. Miller & Mary Kay Kane, Federal Practice and Procedure § 2713 (3d ed. 1998) ("[t]he ruling on a motion to dismiss for failure to state a claim for relief is addressed solely to the sufficiency of the complaint and does not prevent summary judgment from subsequently being granted based on material outside the complaint").

### C.   Plaintiffs Have a Property Interest in Their Continued Employment

The Supreme Court has held that "[t]he right to hold specific private employment and to follow a chosen profession free from unreasonable governmental interference comes within the 'liberty' and 'property' concepts of the Fifth Amendment."  <u>Greene v. McElroy</u>, 360 U.S. 474, 492 (1959).

Under the Fifth Amendment, the federal Government must not deprive individuals of property "without due process of law." U.S. Const. Amend V.  In determining whether Plaintiffs' due process has been violated, the Court must of course first establish whether Plaintiffs have been deprived of a property interest.  <u>Bd. of Regents of State Colleges v. Roth</u>, 408 U.S. 564, 577 (1972).

The Supreme Court has held that property interests are not created by the Constitution.  <u>Roth</u>, 408 U.S. at 577.  "[R]ather they are created and their dimensions are defined by existing rules or understandings that stem from an independent source such as

state law-rules or understandings that secure certain benefits and that support claims of entitlement to those benefits." Id.

Plaintiffs maintain that they have a property interest in their continued employment because the CBAs limit the private security company's right to terminate them except for just cause. Pls.' Cross-Mot. at 14-15. Plaintiffs also argue that the fact that the CBAs contain exceptions to the just-cause clauses in the CBAs does not diminish their property interest in their continued employment. Id. at 15.

Defendant argues that Plaintiffs do not have a property interest in their continued employment because, with a few exceptions, the CBAs were drawn so Plaintiffs were virtually at-will employees. Def.'s Reply in Supp. of His Mot. for Summ. J. on the Due Process Claims and Opp'n to Pls.' Cross-Mot. for Summ. J. ("Def.'s Reply") at 2. Defendant also argues that Plaintiffs do not have a property interest in their medical clearances. Id. at 2-3.

Our Court of Appeals has held that "[t]o determine whether [one] ha[s] a property interest in continued employment, we ask if he [or she] ha[s] a legitimate expectation, based on rules (statute or regulations) or understandings (contracts, expressed or implied), that he would continue in his job." Hall v. Ford, 856 F.2d 255, 265 (D.C. Cir. 1988). In examining the issue of whether the CBAs create a property interest, the Court must be guided by

the language of the contracts. <u>Am. Fed'n of Gov't Employees, Local 2924 v. Fed. Labor Relations Auth.</u>, 470 F.3d 375, 381 (D.C. Cir. 2006); <u>see also</u> <u>N.L.R.B. v. U.S. Postal Serv.</u>, 8 F.3d 832, 836 (D.C. Cir. 1993); <u>Vanover v. Hantman</u>, 77 F. Supp. 2d 91, 102 (D.D.C. 1999) ("Of course, the language involved must be sufficient to create an 'objectively reasonable' expectation that an employee will be terminated only for certain causes.").

Once again, the Court has previously considered and rejected this argument. <u>Int'l Union</u>, 706 F. Supp. 2d at 65-68. The Court previously held that the <u>Int'l Union</u> plaintiffs had an "objectively reasonable" expectation that they would maintain their employment even though there were substantial limits on their expectation "that [they] would continue in [their] job." <u>Id.</u> at 66-67 (quoting <u>Hall</u>, 856 F.2d at 265). Despite these limitations, the Court concluded that these limits on their job protection (i.e., failure to satisfy medical standards) does not and cannot mean that Plaintiffs are deprived of all property interest in their employment. <u>Id.</u> at 66. Such a conclusion would eviscerate the significance of including the just-cause clauses in the CBAs, and for all practical purposes, would render the clauses a nullity. <u>Smith v. Kerrville Bus Co., Inc.</u>, 709 F.2d 914, 919 (5th Cir. 1983) ("To hold as a matter of law that management could, at its sole discretion, terminate an employee without cause would in effect

-13-

allow it the unqualified power to avoid contractually mandated rights and benefits.").

Fundamental principles of labor law support the Court's conclusion. The Ninth Circuit has held that it is "difficult to imagine a meeting of the minds between an employer and a union authorizing an employer to discharge an employee without good cause. Employer security goes to the very essence of a collective bargaining agreement." <u>Dickeson v. DAW Forest Products Co.</u>, 827 F.2d 627, 631 (9th Cir. 1987).

Furthermore, the tradition of just-cause clauses in CBAs is so long-standing that courts have approved finding implied just-cause clauses in CBAs even where no explicit provision exists. <u>See SFIC Properties, Inc. v. Int'l Ass'n of Machinists & Aerospace Workers, Dist. Lodge 94, Local Lodge 311</u>, 103 F.3d 923 (9th Cir. 1996); <u>Smith</u>, 709 F.2d at 919 ("Mindful that we are bound to exercise a reasoned flexibility in construing the terms of a labor contract . . . we are loath to conclude, as a matter of law and undisputed fact, that no just-cause limitation inheres in the . . . collective bargaining agreement."); <u>Young v. Sw. Bell Tel. Co.</u>, 309 F. Supp. 475, 478 (E.D. Ark. 1969), <u>aff'd</u> 424 F.2d 256 (8th Cir. 1970).

### D.   Plaintiffs Received Due Process Before Being Medically Disqualified

Having found that Plaintiffs have a property interest in their continued employment, the Court now addresses the issue of whether

Plaintiffs received due process when they were medically disqualified and terminated.

"[D]ue process is flexible and calls for such procedural protections as the particular situation demands." Morrissey v. Brewer, 408 U.S. 471, 481 (1972). "The essential requirements of due process . . . are notice and an opportunity to respond." Cleveland Bd. of Educ. v. Loudermill, 470 U.S. 532, 546 (1985).

Courts consider three factors in determining whether due process has been afforded: "[f]irst, the private interest that will be affected by the official action; second, the risk of an erroneous deprivation of such interest through the procedures used, and the probable value, if any, of additional or substitute procedural safeguards; and [third], the Government's interest, including the function involved and the fiscal and administrative burdens that the additional or substitute procedural requirement would entail." Mathews v. Eldridge, 424 U.S. 319, 335 (1976).

Plaintiffs maintain that the procedures that Defendant followed did not provide them with sufficient notice of their medical disqualifications or with sufficient opportunity to respond. Pls.' Cross-Mot. at 38-40. Plaintiffs argue that the USPHS's doctor's response form did not provide notice that Plaintiffs were charged with being medically unfit or the bases on which Plaintiffs might be medically unfit. Id. at 38-39. Plaintiffs also argue that they were not allowed to create their

-15-

own responses or to have direct contact with the USPHS doctors. Id. at 39.   They could only submit a prescribed list of medical information from their personal doctors or the private security company's doctors.   Id.

Defendant relies heavily on the fact that the Court granted Defendant's Motion for Summary Judgment on the Int'l Union plaintiffs' due process claim, and that Plaintiffs now before the Court received the same process as the Int'l Union plaintiffs. Def.'s Mot. at 1.

The Court previously held that the additional steps proposed by Plaintiffs are simply not required under the Fifth Amendment's due process clause.   Int'l Union, 706 F. Supp. 2d at 70.   Adequate process can be provided based on written medical records.   Mathews, 424 U.S. at 344; Loudermill, 470 U.S. at 546 (finding that an individual should have the "opportunity to present reasons . . . either in person or in writing").   There is no evidence that having the Int'l Union plaintiffs' objections lodged via written medical reports or communicating through their doctors denied them "a meaningful opportunity to present their case."   Mathews, 424 U.S. at 349.

Plaintiffs also maintain that their private interest in employment is substantial and that the risk of erroneous deprivation is serious.   Pls.' Cross-Mot. at 40-47.   They agree with Defendant that the Government's interest in providing adequate

security for federal courthouses is legitimate.  Id. at 47.
However, Plaintiffs argue that Defendant has not demonstrated that
the Government's interest should outweigh the private interest or
the risk of erroneous deprivation.  Id. at 47-48.

Once again, the Court has previously considered and rejected
this argument.  Int'l Union, 706 F. Supp. 2d at 68-71.  The Court
previously held that, in balancing the private and public
interests, the parties both have significant interests at stake.
Id. at 69.  Plaintiffs face the loss of their continued employment
while the Government must protect federal courthouses.  Id. at 69-
70.  In balancing the risk of erroneous deprivation with the
improved medical screening that additional procedures might
provide, the balance tilts in favor of Defendant.  Id. at 70.

The Supreme Court has held that the review of written medical
records provided by doctors who have personally examined the
patient is a reliable method of review.  See Mathews, 424 U.S. at
344.  In this case, Plaintiffs are given a chance to avoid medical
disqualification by using the USPHS's doctor's response form.
Either Plaintiffs' personal doctors or the private security
company's doctors have a chance to personally examine Plaintiffs
and to respond to the prescribed list of medical information
requested by the USPHS doctors.  Nor is there language limiting or
prohibiting what additional medical information may be included.
Int'l Union, 706 F. Supp. 2d at 63; see also Judicial Security

-17-

Division, Medical Review Form, Felipe Jorge-Rodriguez (Oct. 9, 2001; Aug. 14, 2002) (Ex. 18 to Pls.' Cross-Mot.).

The Court's 2010 decision relied on a Third Circuit case that reached the same conclusion on similar facts. Int'l Union, 706 F. Supp. 2d at 70. In Wilson v. MVM, Inc., 475 F.3d 166, 178-79 (3d Cir. 2007), the court held that while the CSOs' opportunity to respond might not constitute a "traditional hearing, the process afforded the [CSOs] is sufficient given the balance of their interest in maintaining employment and the [G]overnment's interest in security." Again, the reasoning in that decision is just as compelling now as it was in 2010.

Finally, Plaintiffs contend that the lack of post-deprivation process "render[s] their minimal pre-deprivation process constitutionally-infirm." Pls.' Cross-Mot. at 48. However, the Supreme Court has held that "due process is flexible and calls for such procedural protections as the particular situation demands." Morrissey, 408 U.S. at 481. There is also no firm rule that termination procedures must be furnished at a specific time in order to be deemed constitutionally sufficient. See Adkins v. Rumsfeld, No. 1:04CV494, 2005 WL 2593450, at *5 (E.D. Va. Oct. 13, 2005), aff'd 464 F.3d 456 (4th Cir. 2006), cert. denied 551 U.S. 1130 (2007). Indeed, our Court of Appeals has approved the provision of only post-termination process where pre-deprivation process would have been overly burdensome. Washington Teachers'

Union Local #6, Am. Fed. of Teachers, AFL-CIO v. Bd. of Educ. of the Dist. of Columbia, 109 F.3d 774, 781 (D.C. Cir. 1997) (holding that where post-termination relief was available, "due process did not require pre-termination proceedings before [a] 1996 [reduction-in-force]"). As discussed above, this Court has already determined that the pre-termination process that Plaintiffs received is constitutionally sufficient.

In sum, while the terms of the CBAs did create a property interest in Plaintiffs' continued employment, Plaintiffs received their appropriate and sufficient due process before being medically disqualified. Therefore, Plaintiffs' Fifth Amendment due process claim must be denied.

## IV.  CONCLUSION

For the foregoing reasons, Defendant's Motion for Summary Judgment on Plaintiffs' Due Process Claim is **granted** and Plaintiffs' Cross-Motion for Summary Judgment is **denied**. An order shall issue with this Memorandum Opinion.


July 19, 2012
                                    /s/_____
                                    Gladys Kessler
                                    U.S. District Judge

**Copies to: attorneys on record via ECF**

-19-